**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br><br>Steven Hiraldo,<br><br><br><br>                   Debtor. | **FOR PUBLICATION**<br><br>Chapter 7<br><br>Case No. 22-11623 (JPM) |
| Raul Matos,<br><br>                   Plaintiff,<br><br>v.<br><br>Steven Hiraldo,<br><br>                   Defendant. | Adv. Pro. No. 23-01011 (JPM) |

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


*A P P E A R A N C E S:*

**GIULIANO LAW, P.C.**
*Counsel for the Plaintiff*
445 Broadhollow Road, Suite 25
Melville, New York 11747
By:    Anthony F. Giuliano, Esq.

**ORTIZ & ORTIZ, L.L.P.**
*Counsel for the Debtor/Defendant*
287 Park Avenue South, Suite 337
New York, New York 10010
By:    Norma E. Ortiz, Esq.

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.    INTRODUCTION

This case presents the question of whether a $125,000 jury award against the Debtor for civil damages for battery resulting from the Debtor punching the Plaintiff in the face is non-dischargeable under Section 523(a)(6) of the Bankruptcy Code because it resulted from a "willful and malicious injury by the Debtor to another entity or to the property of another entity." The Court finds that the jury verdict is entitled to preclusive effect that the award resulted from a "willful and malicious injury" to the Plaintiff. Consequently, there is no genuine dispute as to any material fact, and the Court GRANTS the Plaintiff's motion for summary judgment on non-dischargeability.

Pending before the Court is Plaintiff Raul Matos' (the "**Plaintiff**" or "**Matos**") *Motion for Summary Judgment* (the "**Motion**"). (AP Docket No. 11).[1] The Plaintiff's Motion seeks an order determining that damages awarded to Matos and against the Debtor Steven Hiraldo (the "**Debtor**" or "**Hiraldo**") pursuant to a civil judgment for battery are non-dischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code. (*Id.* at 2).[2]

In response to the Motion, the Debtor filed the *Opposition to Motion for Summary Judgment* (the "**Opposition**") (AP Docket No. 12) and the *Counterstatement Pursuant to Local Rule 7056-1 of Material Facts as to Which Defendant Contends There is No Genuine Issue to be Tried* (the "**Counterstatement of Facts**"). (AP Docket No. 13).

---

[1] References to "AP Docket No." are to filings on the docket in *Matos v. Hiraldo*, No. 23-01011 (JPM) (Bankr. S.D.N.Y. Oct. 27, 2023). References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure. References to "Local Rule __" are to the Local Bankruptcy Rules for the Southern District of New York. References to "FRCP __" are to the Federal Rules of Civil Procedure.
[2] The Motion contains *Plaintiff's Statement of Material Facts*. (AP Docket No. 11 at 3–4).

Thereafter, the Plaintiff filed the *Reply Brief* in support of his Motion (the "**Reply**"). (AP Docket No. 14).

The Court held a hearing on February 28, 2024 (the "**Hearing**," and the audio recording thereof, the "**Hearing Recording**"), where it heard arguments of counsel and took this matter under advisement.

Following the hearing, the Court permitted the parties to file post-trial memoranda. The Plaintiff filed the *Memorandum of Law in Further Support of Summary Judgment* (the "**Plaintiff's Suppl. Memo**") (AP Docket No. 16) and the Debtor filed the *Defendant's Supplemental Memorandum of Law* (the "**Debtor's Suppl. Memo**"). (AP Docket No. 17). A copy of the state court trial transcript is attached to the Plaintiff's Suppl. Memo (the "**Trial Transcript**"). (AP Docket No. 16-1).

The Court has reviewed and considered the Motion, the Opposition, the Reply, the arguments of counsel at the Hearing, the supplemental memoranda, and all relevant material on the record.

## II.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I).

## III.    BACKGROUND

Prior to the events that led to these proceedings, the Debtor and Plaintiff had both lived in a building located at 161 West 108th Street for many years. (Trial Transcript at 41:3–4). In the early morning hours of December 25, 2014, the Plaintiff allegedly confronted the Debtor on the sidewalk in front of the building and accused the Debtor's family of stealing money from the building in which they lived. (*Id.* at 111:13–23). During this altercation, the Debtor—a trained

3

martial artist and black belt in karate—punched the Plaintiff on the left side of his face.  (Motion

at 3; Counterstatement of Facts at ¶ 6).  The Plaintiff fell and sustained three fractures, two

fractures on the left side of his face and one on the right.  (Counterstatement of Facts at ¶¶ 4, 6).

The Debtor contends that the fractures were caused not by the Debtor's punch, but rather by a

guardrail that the Plaintiff hit when he fell.  (Counterstatement of Facts at ¶ 6).  As a result of his

injuries, the Plaintiff underwent surgery where a metal plate and screws were used to hold his

jawbone together.  (Counterstatement of Facts at ¶ 5).

On February 3, 2017, the Plaintiff filed a complaint naming the Debtor as the Defendant

in the Supreme Court of the State of New York (the "**State Court**") seeking damages for assault

and battery (the "**State Court Action**").  (Motion at 4).  The State Court held a jury trial on

September 23, 24, and 27, 2021.  (Motion at 4; Counterstatement of Facts at ¶ 11).  During

deliberations, the jury was provided legal definitions of assault and battery.  (AP Docket No. 11-

7 (the "**Verdict Sheet**") at 2).  As is relevant here, the jury was instructed that, in order for the

jury to find the Debtor liable for battery, the Plaintiff had to prove by "a fair preponderance of

the evidence" that:

> There was an intentional offensive bodily contact, without that person's consent.
> The intent required for battery is intent to cause a bodily contact that a reasonable
> person would find offensive. An offensive bodily contact is one that is done for the
> purpose of harming another or one that offends a reasonable sense of personal
> dignity.

(*Id*.).

The jury ultimately found the Debtor liable for battery and awarded judgment against the

Debtor in the amount of $125,013.01 (the "**Judgment**").  (Motion at 4; Counterstatement of

Facts ¶ 13).  The jury also found that the Debtor was not acting in self-defense, and that the

Plaintiff was 50% at fault for the battery against him.  (*See* AP Docket No. 11-7;

Counterstatement of Facts at ¶¶ 12, 14).  The $125,000 Judgement awarded by the jury

represented approximately 50% of the damages initially requested by the Plaintiff ($250,000).

(*See* AP Docket No. 11-8).

On December 1, 2022, the Debtor filed the instant voluntary Chapter 7 bankruptcy case.

(BK Docket No. 1).[3]  The Debtor filed his schedules on December 15, 2022, and listed Plaintiff

as the holder of an unsecured claim in the amount of $136,188.31.  (BK Docket No. 9).

On February 13, 2023, the Plaintiff filed the above-captioned adversary proceeding

seeking to determine that the debt owed to the Plaintiff is non-dischargeable under Section

523(a)(6) of the Bankruptcy Code (the "**Adversary Complaint**").  (AP Docket No. 1).  Shortly

thereafter, on April 6, 2023, the Debtor filed an answer denying the substantive allegations in the

complaint ("**Amended Answer**").  (AP Docket No. 5).

On October 27, 2023, the Plaintiff filed the instant Motion and asserted that the Plaintiff

has satisfied all elements needed to establish non-dischargeability.  (*See* AP Docket No. 11).

The Plaintiff specifically asserts that: (i) the Debtor acted willfully (Motion at 6–8); (ii) the

Debtor acted maliciously (*id*. at 8–9); and (iii) the willful and malicious conduct caused the

Plaintiff's injury (*id*. at 10–11).  Furthermore, the Plaintiff asserts that the Debtor is prohibited by

the doctrine of collateral estoppel from re-litigating any matters determined in the State Court

Action.  (*Id*. at 11–14).  Specifically, the Plaintiff asserts that: (i) nearly identical issues were

decided in the prior action and are decisive in the present action (*id*. at 12–13); and (ii) the

Debtor had a full and fair opportunity to litigate these issues in the prior action.  (*Id*. at 13–14).

In the Opposition, the Debtor asserts that the Plaintiff has failed to prove that the Debtor

willfully caused the injury he suffered.  (Opposition ¶¶ 9–12).  The Debtor bases his argument on

---

[3] References to "BK Docket No." are to filings entered on the docket in *In re Steven Hiraldo*, No. 22-11623 (JPM)
(Bankr. S.D.N.Y. Dec. 1, 2022).

the fact that: (i) the Plaintiff cannot prove that the Debtor intended to break the Plaintiff's jaw

(*id*. at ¶ 9); and (ii) the jury found that the Plaintiff was 50% responsible for the damages. (*Id*. at

¶¶ 9–10). Moreover, the Debtor does not contest that he is barred from re-litigating issues

decided by the State Court.  (*Id*. at ¶ 13).

In the Reply, the Plaintiff further supplements his position taken in the Motion by arguing

that: (i) malice may be implied from the conduct of the Debtor (Reply ¶¶ 2–4); and (ii) intent to

cause injury may be inferred from the circumstances.  (*Id*. ¶¶ 5–6).

## IV.   LEGAL STANDARDS AND DISCUSSION

### A.  Summary Judgment

Bankruptcy Rule 7056 provides that FRCP 56 is applicable to bankruptcy adversary

proceedings.  *See* Fed. R. Bankr. P. 7056.  Under FRCP 56, summary judgment is proper "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is capable of

"influencing the case's outcome under governing substantive law," and a dispute is "genuine"

where the evidence in the record "would permit a reasonable juror to find for the party opposing

the motion."  *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When viewing the evidence, the court must assess the

record "in the light most favorable to the non-movant and . . . draw all reasonable inferences in

the non-movant's favor."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

### B.  Non-dischargeability under Section 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code provides that:

A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this
title does not discharge an individual debtor from any debt . . . for willful and
malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).  "The terms 'willful' and 'malicious' are separate elements, and both

elements must be satisfied" to meet the requirements of Section 523(a)(6).  *In re Krautheimer*,

441 B.R. 330, 340 (Bankr. S.D.N.Y. 1999).

The Plaintiff generally asserts that the Section 523(a)(6) standard is met because the jury

verdict is entitled to preclusive effect, which prevents the Debtor from contesting the willful and

malicious nature of the injury that the Debtor caused.  (Motion at 11–14).  The Debtor concedes

that the jury verdict is preclusive on issues decided by the jury.  (Opposition ¶ 13).  However, the

Debtor argues that the jury verdict does not establish that the Debtor intended to cause the

specific injury (i.e., the broken jaw) that the Plaintiff suffered, which the Debtor contends is

necessary for the Plaintiff to prevail on his claim.  (*Id*. ¶¶ 9–12).

As the Debtor does not dispute that the jury verdict is preclusive as to all issues decided

in the State Court Action, the Court will examine each element of the 523(a)(6) claim to

determine whether any genuine issue as to any material fact remains.

### 1.  **Willfulness**

The first element of a Section 523(a)(6) non-dischargeability claim is whether the

Debtor's conduct was willful.  To establish willfulness, a party objecting to dischargeability

"must demonstrate that the debtor deliberately intended to cause injury, not just that the

defendant committed an intentional act that unintentionally inflicted injury."  *In re Soliman*, 515

B.R. 179, 191 (Bankr. S.D.N.Y. 2014); *see also Kawwaauhau v. Geiger*, 523 U.S. 57, 64 (1998)

(noting that "willful . . . modifies the word 'injury,' indicating that non-dischargeability takes a

deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury").

The Plaintiff asserts that the jury's finding that the Debtor was liable for battery and the finding that the Debtor was not acting in self-defense conclusively establishes that the Debtor acted willfully.  (Motion at 7–8).

In response, the Debtor makes two arguments to dispute that he acted willfully: (i) the Debtor did not intend to cause the injury and was not reasonably certain that the injury would occur (Opposition ¶ 10); and (ii) the jury found the Plaintiff to be 50% responsible for the battery committed against him.  (*Id.* ¶¶ 9–10).

Here, the Court finds that jury verdict is preclusive as to the Debtor's willfulness.  The jury instructions demonstrate that the elements used to find the Debtor liable for battery were as follows:

> There was an **intentional offensive bodily contact**, without that person's **consent**. The intent required for battery is **intent** to cause a **bodily contact** that a reasonable person would find **offensive**. An offensive bodily contact is one that is done for the purpose of **harming another** or one that **offends** a reasonable sense of **personal dignity**.

(AP Docket No. 11-7) (emphasis added).

Based on this instruction, in finding that the Debtor committed battery, the jury determined that the Debtor intentionally caused a bodily contact for the purpose of harming the Plaintiff, or for the purpose of offending the Plaintiff's reasonable sense of personal dignity, without the Plaintiff's consent, both of which satisfy the willfulness element of Section 523(a)(6) of the Bankruptcy Code.

The Debtor cites to several cases for the proposition that a state court judgment for assault or battery is insufficient to establish willfulness under Section 523(a)(6) of the Bankruptcy Code.  (Opposition at ¶¶ 6–8; Debtor's Suppl. Memo at ¶¶ 3–5).  However, the Court finds that the cases cited by the Debtor are distinguishable.  For instance, in *Heilbron*, the

plaintiff sought a judgment declaring a debt non-dischargeable where the damages were suffered

when the debtor punched the plaintiff in the chin, breaking his jaw.  *In re Heilbron*, 655 B.R.

277, 280 (Bankr. E.D.N.Y. 2023).  The debtor was ultimately criminally convicted of assault in

the third degree under New York Penal Law Section 120.00, which has three disjunctive

subsections, as follows:

> A person is guilty of assault in the third degree when:
>
> 1. With intent to cause physical injury to another person, he causes such injury to
> such person or to a third person; or
> 2. He recklessly causes physical injury to another person; or
> 3. With criminal negligence, he causes physical injury to another person by means
> of a deadly weapon or a dangerous instrument.

*Id.* at 282 (citing N.Y. Penal Law § 120.00).  The bankruptcy court initially granted summary

judgment and found that the assault conviction was preclusive as to the non-dischargeability

claim, but that decision was reversed on appeal by the district court, which found that the

debtor's guilty plea did not identify the mental state that the debtor was in when he committed

the assault.  *In re Heilbron*, No. 18-42486-ESS, 2020 WL 259563, at *19 (Bankr. E.D.N.Y. Jan.

15, 2020), *vacated and remanded sub nom. Heilbron v. Plaza*, No. 20-CV-00312 (CBA), 2021

WL 1062034, at *5 (E.D.N.Y. Mar. 19, 2021).  Following remand, the bankruptcy court held a

trial on the debtor's maliciousness, and ultimately held that the debt was non-dischargeable.

In *In re Alexander*, 503 B.R. 19 (Bankr. W.D.N.Y. 2013), the court also considered the

preclusive effect of a conviction for assault in the third degree (under the same statute considered

in *Heilbron*) stemming from a broken eye socket sustained in a fight during a hockey game.  *In*

*re Alexander*, 503 B.R. 19, 20 (Bankr. W.D.N.Y. 2013).  In *Alexander* (unlike in *Heilbron*), the

debtor's guilty plea specified that the debtor was convicted under New York penal law section

120.00(2), indicating that the debtor acted recklessly in committing the assault. *Id.* at 22.

9

Because the criminal conviction established that the debtor acted recklessly instead of willfully,

the court found that the criminal conviction was not preclusive as to the plaintiff's non-

dischargeability claim, and the court conducted a full trial on the merits where the debt was

ultimately found to be non-dischargeable under Section 523(a)(6) of the Bankruptcy Code. *Id.* at

23.

These cases are inapposite here because under either prong of the jury instruction for

battery in this case, the jury found that the Debtor intended to harm the Plaintiff or intended to

offend a reasonable sense of personal dignity, which both satisfy the willfulness element.

Finally, the Debtor's argument that the willfulness element requires a finding that the

Debtor intended to break the Plaintiff's jaw is without merit. (Counterstatement of Facts at ¶ 6).

As set forth above, to satisfy the willfulness element, Plaintiff must demonstrate that the Debtor

deliberately intended to cause injury, not just that the defendant committed an intentional act that

unintentionally inflicted injury. *See Soliman*, 515 B.R. at 191. Here, the jury found that the

Plaintiff *intentionally* caused a bodily contact *for the purpose* of harming the Plaintiff, or *for the*

*purpose* of offending the Plaintiff's reasonable sense of personal dignity.

Accordingly, the Court finds that the jury verdict is preclusive as to the willfulness

element of the Plaintiff's non-dischargeability claim, and there is no genuine dispute of material

fact regarding this issue.

### 2. **Maliciousness**

The second element of the Plaintiff's non-dischargeability claim is whether the Debtor's

conduct was malicious. To establish maliciousness, a party objecting to dischargeability must

demonstrate that the debtor acted wrongfully and "without just cause or excuse, even in the

absence of personal hatred, spite, or ill will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94

F.3d 84, 87–88 (2d Cir. 1996).  Malice may be constructive or implied.  *Id.* at 88 (citations

omitted).  "Implied malice may be demonstrated 'by the acts and conduct of the debtor in the

context of [the] surrounding circumstances.'"  *Id.* (citing *In re Stanley,* 66 F.3d 664, 668 (4th Cir.

1995); *see also In re Ikner,* 883 F.2d 986, 991 (11th Cir.1989) ("Constructive or implied malice

can be found if the nature of the act itself implies a sufficient degree of malice")).

The Plaintiff relies on two arguments to assert that the Debtor acted maliciously. First,

the Plaintiff asserts that the jury's finding that the Debtor did not act in self-defense shows that

the Debtor's actions were malicious.  (Motion at 8).  Second, the Plaintiff asserts that the conduct

of the Debtor (punching someone in the face) is out of the ordinary conduct and thus malice can

be implied.  (*Id*. at 8–9).  The Debtor's Opposition does not directly address the issue of malice,

and counsel for the Debtor stated at the Hearing that the Court can impute malice in this case.

(Hearing Recording at 19:50–20:00).  Finally, the Plaintiff's Reply largely raised two arguments:

(i) malice may be implied from the conduct of the Debtor (Reply ¶¶ 2–4); and (ii) intent to cause

injury may be inferred by the circumstances.  (*Id*. ¶¶ 5–6).

The Court agrees with the Plaintiff that the jury verdict is preclusive with regard to the

Debtor's maliciousness.  First, as set forth above, the elements used to find the Debtor liable for

battery were as follows:

> There was an intentional offensive bodily contact, without that person's consent.
> The intent required for battery is intent to cause a bodily contact that a reasonable
> person would find offensive. An offensive bodily contact is one that is done for the
> purpose of harming another or one that offends a reasonable sense of personal
> dignity.

(AP Docket No. 11-7 at 2).  Accordingly, by finding the Debtor liable for battery, the jury found

that the Debtor intentionally caused a bodily contact for the purpose of harming the Plaintiff, or

for the purpose of offending a reasonable sense of personal dignity, either of which is sufficient to satisfy the malice element of Section 523(a)(6) of the Bankruptcy Code.

Second, though the jury found that the Plaintiff was 50% responsible for his injuries and therefore correspondingly reduced his recovery, the jury also found that the Debtor did not act in self-defense. (*See* AP Docket No. 11-7). While the Court recognizes that the summary judgment standard requires the Court to draw all inferences in favor of the *non-moving* party. (*See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)), the Court agrees with Plaintiff that malice may be implied here because the jury found that the Debtor did not act in self-defense. *See e.g., In re Soliman*, 539 B.R. 692, 700 (Bankr. S.D.N.Y. 2015) (noting that "[a]bsent a valid self-defense claim, there is no just cause or excuse for [the debtor's] actions" in biting the plaintiff's nose); *see also* Hearing Recording at 19:50–20:00 (where Debtor's counsel agreed that malice may be implied in this case).

Thus, the Court finds that there is no genuine dispute of material fact regarding the malice element of the Plaintiff's non-dischargeability claim.

## V.   **CONCLUSION**

For the foregoing reasons the Plaintiff's Motion is GRANTED.

**It is SO ORDERED.**

Dated: July 9, 2024
New York, New York

                                        /S/ John P. Mastando III
                                        HONORABLE JOHN P. MASTANDO III
                                        UNITED STATES BANKRUPTCY JUDGE